### 28354. SUMMERS *v.* THE STATE.

DECIDED OCTOBER 30, 1940.

*James W. Smith, Fort, Fort & Fort,* for plaintiff in error.

*Carl E. Crow, solicitor-general, Walter Jones, Rosser Malone, Fred W. Lagerquist,* contra.

MacIntyre, J. O. T. Summers was charged with cheating and swindling, for that he did, "with intent to defraud one R. B. Saunders, by deceitful means and artful practices falsely represent to R. B. Saunders by and through the agent of R. B. Saunders,

W. A. Fowler, that he, the said accused, had a contract with the Government through the rehabilitation agent in Fort Gaines, Georgia, for 20 tons of shelled Spanish peanuts that the accused must deliver immediately, and that he, the said accused, under his contract with the Government was receiving a price that would enable him to pay R. B. Saunders $80 per ton for the quality of peanuts that Saunders owned, . . that said representations were false and fraudulent, knowingly so, and made wilfully and for the purpose and with the intent to deceive and defraud said R. B. Saunders; and the said R. B. Saunders, not knowing said representations were false and fraudulent, but believing them to be true and relying upon them as true, had his agent, W. A. Fowler, deliver to said O. T. Summers approximately 8200 pounds of Spanish peanuts in the shell from East Albany warehouse, tradename of R. B. Saunders, of the property of R. B. Saunders and of the value of $3300, thereby cheating and defrauding said R. B. Saunders out of the sum of $3300 of the value of $3300, to the injury, loss, and damage to R. B. Saunders of $3300; the truth and fact being that the said O. T. Summers had no such contract with the Government and rehabilitation agent at Fort Gaines, Georgia, all of the representation being false and fraudulent and with the intent to deceive and cheat and defraud said R. B. Saunders, and did cheat and defraud him in the manner and sense above set out." The defendant's demurrers, general and special, were overruled. He excepted pendente lite. He pleaded in abatement, that "the indictment returned by the grand jury was not supported by any evidence adduced before the grand jury, and for that reason the indictment was void." The solicitor-general filed a traverse of the plea, and the issue thus formed was submitted to a jury, who, by direction of the court, found in favor of the traverse. To this ruling the defendant excepted. At the trial of the case on its merits the defendant was convicted. He excepted to the overruling of his motion for new trial.

■ An indictment drawn under the Code, § 26-7410, sets forth an offense thereunder as against demurrer, where it shows that the owner of property of value was·induced by deceitful means and artful practices to part with the possession thereof, and was thereby defrauded and cheated. *Davis* v. *State*, 27 *Ga. App.* 195 (107 S. E. 883) ; *Morse* v. *State*, 9 *Ga. App.* 424 (2) (71 S. E. 699).

The essential elements of the offense of cheating and swindling are set forth in *Phillips* v. *State*, 40 *Ga. App.* 141, 142 (149 S. E. 157), and *Diamond* v. *State*, 52 *Ga. App.* 184 (182 S. E. 813). Where every essential ingredient of the offense charged is set forth with sufficient clearness to enable the defendant to prepare his defense, and the jury clearly to understand the nature of the offense, and the indictment is exact enough to protect the defendant from a second jeopardy, the indictment is not demurrable. *Williams* v. *State*, 2 *Ga. App.* 629 (2) (58 S. E. 1072) ; *Hawkins* v. *State*, 58 *Ga. App.* 386 (198 S. E. 551), and cit.; *McGinty* v. *State*, 59 *Ga. App.* 675, 677 (2 S. E. 2d, 134). The indictment was sufficient under this rule. The court did not err in overruling the demurrers.

■ The defendant contends that "an indictment must be based on some legal evidence, and an indictment of an offense which is made up of several distinct elements must be based on evidence supporting each of the necessary elements." In the brief it is contended, that there was no legal evidence before the grand jury that the defendant Summers did not have such a contract as was referred to in the indictment, and hence a representation that he had such a contract was not proved untrue. Also, that "There was absolutely no legal evidence to support this essential fact [that there was no such contract]. All of the witnesses who appeared before the grand jury testified, on the trial of the plea in abatement, that they did not know anything of their own knowledge whether or not Summers had such contract. One witness, W. A. Fowler, testified that *others* [including the agent referred to in the indictment] *told him* that Summers did not have any such contract. We think it is unnecessary to point out that hearsay evidence has no probative value; in other words, hearsay evidence amounts to no evidence. It is further established in this State that hearsay testimony alone can not establish a fact, and any verdict resting upon hearsay evidence alone can not stand." In Washington *v.* State, 63 Ala. 189, it is said: "The indictment in this case was found in November, 1879, and charged that the defendant, Alexander Washington, 'with intent to steal, broke into and entered the dwelling-house of Amanda Arnold.' Before pleading to the indictment, the defendant moved the court to quash it, or to strike it from the files, on the ground that there was no

legal evidence before the grand jury implicating the defendant in the commission of the offense; and in support of this motion he offered to prove by several of the grand jurors, and by Mrs. Amanda Arnold, the prosecutrix, who was the only witness examined before the grand jury, 'that her testimony before the grand jury was to the extent that her house had been broken into and entered, and certain goods stolen from it,. but she testified to nothing tending to connect the defendant with the commission of said offense, except what had been told to her by other witnesses, for whom subpœnas were issued, but who were not examined as witnesses before said grand jury.'" The motion was overruled. In the opinion, Judge Stone, speaking for the court, said: "In refusing to entertain the motion to strike the indictment from the file and quash it, the city court ruled in precise accordance with what was said by this court in Sparrenberger's case, 53 Ala. 481 (25 Am. R. 643). We there said, 'When it appears witnesses were examined by the grand jury, or the jury had before them legal documentary evidence, no inquiry into the sufficiency of the evidence is indulged.' In this case a competent witness was sworn and examined before the grand jury. The precise point urged in argument is that the grand jury found the bill on insufficient testimony, in this: that while there was proof that a burglary had been committed as charged, no legal evidence was given before that body, showing that the accused was the guilty offender. To allow such inquiry and testimony would be not only to disregard what was said in Sparrenberger's case, copied above, but would greatly retard and embarrass the administration of the law. The city court rightfully refused to enter upon the inquiry of the *sufficiency* of the evidence before the grand jury."

It seems to us that this reasoning is sound, is directly in point, and is in line with the majority rule on this subject. 31 A. L. R. 1479. See State *v.* Fasset, 16 Conn. 457; People *v.* Schmidt, 33 Cal. App. 426 (165 Pac. 555); People *v.* Panagoit, 25 Cal. App. 158 (143 Pac. 70). In *Powers* v. *State,* 172 *Ga.* 1 (3) (157 S. E. 195), it was said: "Another ground of the plea in abatement is that there was not sufficient evidence introduced before the grand jury to make out a prima facie case and to authorize the returning of the bill of indictment. It is not contended that there was no evidence introduced before the grand jury. This ground was prop-

erly overruled. It has never been the practice in this State to go into an investigation to test the sufficiency of the evidence before the grand jury." In *Cox* v. *State,* 3 *Ga. App.* 609 (3) (60 S. E. 283), this court said: "A motion to quash an indictment because of insufficient evidence will not be entertained by the court, the question being one of fact for the [grand] jury." See *Switzer* v. *State,* 7 *Ga. App.* 7 (65 S. E. 1079). Thus, where in the instant case it appears that a competent witness or witnesses were sworn and examined before the grand jury by whom the indictment was preferred, a plea in abatement on the ground that it was found on insufficient evidence, or illegal evidence, or no evidence, will not be sustained, because it comes under the rule that no inquiry into the sufficiency or legality of the evidence is indulged. Competent witnesses having been sworn and examined before the grand jury, the sufficiency of the evidence introduced before it is a question for determination by the grand jury, and not by the court.

■ The defendant contends, under the general grounds and special grounds 1, 2, and 4 (which are but elaborations of the general grounds and will be considered as such), that the person alleged to have been damaged relied on and acted upon a promise and a future representation by the defendant, and not upon any misrepresentation as to an existing fact, and therefore that the defendant can not be legally convicted. Where there has been a false representation as to an existing fact, the offense of cheating and swindling is complete, notwithstanding there may have been, as a part of the inducement to the person defrauded to part with his money, a promise by the swindler to be performed in the future. *Scarborough* v. *State,* 51 *Ga. App.* 667, 668 (181 S. E. 230). It appears from the evidence that W. A. Fowler, an agent for R. B. Saunders, the person defrauded, testified that he sold the peanuts to the defendant with the understanding that the defendant had a contract with the rural rehabilitation at Fort Gaines; that the defendant told him, "I can pay $80 [per ton] under the contract I have with the Fort Gaines man;" that he called Saunders, and "he agreed to let him [defendant] have them on the understanding that he had the contract with the Fort Gaines man." R. B. Saunders testified that he was never paid for the peanuts in question, which were worth about $3300. W. D. Hammack and D. B. Howard testified that they were in charge of the rural rehabilitation work

and agency in Fort Gaines in Clay County, and that they had not at any time any contract with the accused for the purchase of peanuts. The defendant in his statement denied that he made any representation that he had a contract with the Government, and denied that he owed anything except $128, which he offered to pay. He attempted to show through witnesses that credit had been extended, and that he was not guilty as charged. The judge in his charge to the jury presented all the issues in the case. The jury having resolved all issues of fact against the defendant, this court can not interfere. The evidence authorized the verdict, and the general grounds are without merit.

■ In special ground 3 it is contended that the court erred in failing to charge the constitutional provision that "There shall be no imprisonment for debt." Code, § 2-121. The judge charged the jury as follows: "If you believe that credit was extended to the defendant and that the alleged goods in question were not obtained by any fraudulent representation knowingly made with intent to defraud, and relied on by the person to whom they were made, believing them to be true, suffered a loss, then and in that event, those facts being the truth of the transaction, you would not be authorized to find the defendant guilty." Under this charge the judge in effect told the jury that they could not imprison the defendant for a debt; and if the defendant desired a fuller charge, he should have made an appropriate written request. This ground is not meritorious.

■ Ground 5 complains that the judge committed harmful error in failing to charge on the law of circumstantial evidence, because the only evidence upon which the jury could infer that the representation that the defendant had a contract with the Government was knowingly made was circumstantial evidence. W. D. Hammack, and D. B. Howard who succeeded him as agent, testified to the fact that they were in charge of the agency of the governmental rural rehabilitation work in Fort Gaines and in Clay County, Georgia, during the period referred to in the indictment, and that they had not at any time any contract with the accused for the purchase of peanuts. The defendant stated to the jury that he did not make any representation as to any contract with the government. The testimony by the other party (the rural rehabilitation government agents in Fort Gaines and Clay County) with whom it is

alleged the defendant claimed to have entered into a contract, that no such contract was ever executed or was ever in existence, was direct evidence which immediately proved the fact of knowledge on the part of the defendant that no such contract ever existed, and was the "legal equivalent" of direct testimony or evidence that the defendant knew no such contract had been in existence. Such being the case, there was the "legal equivalent" of direct evidence on the essential element of knowledge; and the judge did not err in failing, without request, to charge the law of circumstantial evidence. *Reddick* v. *State,* 11 *Ga. App.* 150 (3) (74 S. E. 904) ; *Wilson* v. *State,* 152 *Ga.* 337, 341 (110 S. E. 8) ; *Scott* v. *State,* 57 *Ga. App.* 489, 492 (195 S. E. 822) ; *McNabb* v. *State,* 44 *Ga. App.* 306, 308 (161 S. E. 369). This ground is not meritorious.

*Judgment affirmed. Broyles, C. J., concurs. Gardner, J., disqualified.*