30938. CURTIS *v.* THE STATE.

DECIDED SEPTEMBER 10, 1945. REHEARING DENIED SEPTEMBER 29, 1945.

*Graham Wright, L. H. Covington,* for plaintiff in error.
*Henderson Lanham, solicitor-general, Chastine Parker,* contra.

GARDNER, J. ■ In special ground 1, error is assigned because the court excluded from the consideration of the jury a properly certified copy of the proceedings committing the defendant to the California Insane Asylum and adjudging him to be insane. The court excluded this documentary evidence at the instance of the State, upon the ground that the offense was alleged to have occurred on March 17, 1943, and that therefore the judgment of commitment on July 14, 1943, and the proceedings upon which it was based would shed no light on the mental condition of the accused at the time of the alleged commission of the offense—approximately four months thereafter.

The State bases its contention as to the inadmissibility of this documentary evidence on the principle discussed by this court in *Murphy* v. *State,* 70 *Ga. App.* 387 (28 S. E. 2d, 198), the headnotes in which are: "1. Criminal responsibility is deter-

mined by the condition of the accused's mind at the time he committed the criminal act. 2. A copy of the inquisition, or judgment, in the court of ordinary finding the defendant insane, rendered a month after the crime was committed, was properly not admitted in evidence on the trial of a criminal accusation in the criminal court of Fulton County. Aliter, where the inquisition had adjudged the defendant 'habitually insane' before the commission of the crime. 3. For the purpose of shedding light on the defendant's state of mind at the time the alleged crime was committed, evidence of his condition, as shown by his acts and conduct, or as shown by any other competent evidence, may be shown both before and after the alleged criminal act, if properly connected up. 4. If properly connected up, the defendant's condition on the very day of the inquisition, whether the inquisition was before or after the commission of the crime, may be shown by the witness or witnesses who testified in the proceeding in the ordinary's court which adjudged him insane, or by any other competent evidence that he was insane on that day." The judgment of commitment in the instant case is not materially different from the one under consideration in the *Murphy* case. On the other hand, distinguished counsel for the defendant contends that, under a proper construction and application of the opinion of this court in the *Murphy* case, it was reversible error to exclude the documents. No doubt counsel in the written brief expressed their interpretation of the ruling in the *Murphy* case better than we are able to do. Therefore we quote it: "While we recognize the fact that this court, in the case of *Murphy* v. *State,* held that an inquisition of insanity after the commission of the offense was not admissible, yet we submit that this case is not controlling against us in this case but is actually favorable to our contention, for the court there says that, for the purpose of shedding light on the defendant's state of mind at the time the alleged crime was committed, evidence of his condition, as shown by his acts and conduct, or as shown by any other competent evidence, may be shown before and after the alleged criminal act, if properly connected up, and we submit that in this case the evidence was properly connected up. It will be observed from the entire proceedings that it was shown by the findings of the inquisition in California that the plaintiff in error was mentally ill and was an insane person, and that he was suf-

fering from a brain tumor during March, 1943; that his brain was trephined at Stanford Hospital at that time, but that the operation was palliative only; that he had since had periods of amnesia and aphasia with irrational actions; that he has shown mental deterioration with facial changes; that he was sluggish in thought; and that he was suffering from organic brain changes; all of which facts bring this commitment record clearly within the ruling in the *Murphy* case, wherein the court holds that, where the inquisition had adjudged the defendant habitually insane before the commission of the crime that the record of such inquisition might be shown, and therefore under that case, makes this evidence admissible." Under the facts of this case counsel for the State puts the proper construction on the opinion in the *Murphy* case, rather than able counsel for the defendant. In that case the court held, and we so hold in the case before us, that an adjudication as to the insanity of the defendant subsequently to the date of the alleged commission of the crime was not admissible for the purpose of establishing the mental state of the accused on the date of the commission of the crime. The rule of evidence as to the admissibility of a subsequent adjudication of insanity, invoked by counsel for the plaintiff in error, obtains in some jurisdictions. The decisions of the appellate courts of our country are not uniform as to the evidentiary value of a judgment of insanity rendered subsequently to the date of the act under investigation. In some jurisdictions, such subsequent proceedings are admissible as a rebuttable presumption of fact. In others, such a subsequent judgment is admissible, not as a presumption, but as evidence to be considered along with all the other evidence in the case to determine the state of mind at the time of the conduct under investigation; while in other jurisdictions, such a subsequent judgment has no evidentiary value. 68 A. L. R. 1314; 7 A. L. R. 568, 576, 582; 28 Am. Jur. 756. As to the introduction of evidence other than a judgment of subsequent adjudication of insanity, where sanity is an issue, the appellate courts in all jurisdictions are very liberal in the admission of testimony tending to shed light upon the state of mind at the time of the act in question. In a proper case this period may cover a period of time from the date of the trial backward to insanity of the ancestral line both direct and collateral. 22 C. J. S. 945. Our own Supreme Court in an early

opinion (*Terry* v. *Buffington,* 11 *Ga.* 337, 56 Am. D. 423) established as a rule of evidence that a judgment of subsequent adjudication of insanity has no evidentiary value as such to establish the mental condition at a prior date involving conduct as to the act under investigation. In the same opinion, the court held that evidence of the mental condition of the person concerned "both before and, after that period may be produced." The court further said: "We are not prepared to rule that the inquisition of lunacy, found in 1849 [the act under investigation being whether the testator had mental capacity to execute the will - in 1844], stands upon the same footing." The decision in the *Murphy* case, supra, was a mere enunciation of the rule established in the *Terry* case. See also *McKenzie* v. *State,* 72 *Ga. App.* 208 - (33 S. E. 2d, 539). The rule of evidence, to the effect that a subsequent adjudication of insanity is inadmissible to shed light on the mental state prior to such adjudication, is not an isolated one. See the authorities above cited. This rule was erected upon high and firm ground. After years of observation, research, and survey, it has been found to be just and has been followed throughout the years. .The court did not err in refusing to admit in the instant case the proceedings of subsequent adjudication.

■ In special ground 2, error is assigned on the failure to charge on the question of intent. On this question the court charged: "The defendant is indicted, charged with the offense of larceny after trust. Any person who has been instructed [entrusted] by another with money, or any other article or thing of value, for the purpose of applying the same for the use or benefit of the owner or person delivering it, who shall fraudulently convert the same to his own use, shall be punished by imprisonment and labor in the penitentiary for not less than one year, nor more than five years. . . A crime or misdemeanor shall consist in the violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence. Intention may be manifested by the circumstances connected with the perpetration of the offense and the sound mind and discretion of the person accused. Every person is presumed to intend the natural and necessary consequences of his acts. Therefore the law presumes that every act which is in itself unlawful was criminally intended, until the contrary is made to appear, but

the question of intention rests finally with the jury." It would thus seem that the court covered the question. Counsel for the plaintiff in error cite *Wood* v. *State,* 11 *Ga. App.* 242 (74 S. E. 1100). That case is not in point. The extent of that opinion is that the evidence did not authorize the jury to find that there was an intent to defraud. This assignment is without merit.

■ Special ground 3 assigns error because the court failed to charge "that, in the event they found that the defendant was insane at the time the money was converted to his own use, it would be their duty to acquit him." The judge devoted several paragraphs of his charge to the question of insanity. During the course of the instructions he charged: "A lunatic or insane person without lucid intervals shall not be guilty of any crime or misdemeanor with which he may be charged, provided the act so charged as criminal was committed in the condition of such lunacy or insanity; but if a lunatic has lucid intervals of understanding, he shall answer for what he does in those intervals as if he had no deficiency." In the absence of a written request for more amplified instructions on the question presented, it is our opinion that the general charge covered the issue.

In presenting the assignment of error in this ground counsel for the plaintiff in error invoke the principles involved in the cases of *McLendon* v. *State,* 14 *Ga. App.* 737 (82 S. E. 317), *Hendrix* v. *State,* 25 *Ga. App.* 12, 13 (102 S. E. 377), and *Cammons* v. *State,* 59 *Ga. App.* 759 (2 S. E. 2d, 205), all of which are to the effect that it is the duty of the court in its charge, without a request, to cover every material issue in the case. There is no question as to the duty of the court to charge on every material issue in a case without a written request as set forth in the decisions cited. But for the reason above stated, we can not agree with counsel that the court did not do this. This ground is not meritorious.

4. Special ground 4 complains because the court charged: "So, gentlemen, if you believe that the person named in the indictment, Freeman B. Cargle, did in this county, at any time within four years prior to the finding and returning of this bill of indictment by the grand jury, intrust to the defendant the money of the value mentioned in the indictment, for the purpose alleged in the indictment, that is for the purpose of applying the same for his own use or benefit, and you shall further believe that, after

being so intrusted with this money, the defendant did, in this county, at any time within four years prior to the finding and returning of this bill of indictment into court by the grand jury, fraudulently convert the same to his own use, then, and in that event, you would be authorized to find the defendant guilty as charged in the bill of indictment." This charge is assigned as error because: (a) It authorized the jury to find the defendant guilty if he fraudulently converted the money to his own use without regard to his sanity or insanity at the time of the conversion; and (b) it was an instruction that the defendant would be guilty if he fraudulently converted the money to his own use without any reference to the defendant's insanity, which question the jury had a right to consider, under the evidence submitted. When we view the charge as a whole, the excerpt excepted to was but a summary. The court had already instructed the jury fully upon the question of insanity. During the course of the instructions and before the excerpt complained of, the court, among other things on the question of insanity, said: "The evidence bearing upon the question of insanity should, however, be duly considered in connection with all the other evidence, in determining whether or not, upon a view of the whole case, there was a reasonable doubt of the guilt of the accused." There is no reversible error in this ground. Special grounds 5 and 6 are abandoned.

5. Special ground 7 assigns error because the court failed to charge the rule applicable to circumstantial evidence. Counsel contends that fraudulent intent is an essential element of the crime for which the defendant was convicted. He further contends that evidence as to the fraudulent intent of the accused was wholly circumstantial, and the law of circumstantial evidence should have been charged without a written request. Of course it is agreed that as an abstract principle of law, where a question to be determined by the jury is wholly dependent upon circumstantial evidence, it is reversible error for the court, without a written request, to fail to charge the principle relating to the effect of circumstantial evidence. After a careful consideration of the evidence as it appears in the brief of evidence, we are convinced that the question of fraudulent intent on the part of the accused was not wholly dependent upon circumstantial evidence. The question of intent which actuates a person to do a particular thing is diffi-

cult to ascertain. The proof of facts from which the jury might infer specific intent is considered direct evidence and not circumstantial evidence. On this question the court charged: "Every person is presumed to intend the natural and necessary consequences of his acts. Therefore the law presumes that every act which is in itself unlawful was criminally intended, until the contrary is made to appear, but the question of intention rests finally with the jury." This court in a comparatively recent case, *Summers* v. *State, 63 Ga. App.* 445 (5) (11 S. E. 2d, 409), dealing with this question and citing several authorities, said: "When facts from which the inference of guilt or innocence is to be drawn are all established by direct proof, and only knowledge on the part of the defendant with which the criminal act was committed must be inferred, the judge, in the absence of a timely request, is not required to give in charge to the jury the usual rule applicable to circumstantial evidence." See also *Henderson* v. *State, 38 Ga. App.* 368 (144 S. E. 9). From the brief of evidence more than a few incidents appear in the course of the testimony of a number of witnesses, who testified directly and positively as to facts from which the jury were authorized to infer the fraudulent intent of the accused. This special ground contains no reversible error.

6. As to the general grounds, the jury were authorized, under the evidence, to find the defendant guilty.

There being no reversible error in any of the special grounds, the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*